The next case on the call this morning is agenda number 14, number 128275 Sandra Hart et al. versus the Illinois State Police. Counsel for the appellant, are you prepared to speak? May it please the court, I am Valerie Quinn here on behalf of the Illinois State Police. I would like to begin by discussing the plain language of section 7.5b of the Freedom of Information Act, what it means and how a person can get a copy of their own personal documents without making a FOIA demand. I would also like to discuss why FOIA is the wrong tool for obtaining copies of these private documents and why there are risks in finding an unwritten exception to the Act's plain terms. Finally, I will briefly touch on the permanent injunction in this case that prohibits ISP from disclosing anyone's FOIA information. The language in section 7.5b is plain. It unambiguously prohibits the disclosure of people's FOIA card information without exception and it is clear that the General Assembly did not intend to include an exception of any kind in that prohibition because not only in the same provision but in the very same sentence, the General Assembly explicitly allowed for an exception for information of applicants for a concealed carry license. Under the basic principles of statutory construction, that omission has meaning and that clear, unequivocal language should have been the end of the inquiry. The inquiry should have ended not only because the provision's language is so exceptionally clear but because as ISP pointed out during the circuit court hearing in Mr. Burgess' case, that the way to get a copy of your application or denial letter is not by making a FOIA demand of ISP's FOIA officer but to contact the Firearms Services Bureau directly. No one is trying to keep people's personal applications or denial letters a secret from them. But the Firearms Services Bureau needs to be able to verify that you are who you say you are before releasing copies of your confidential information. And so the Bureau will ask people to provide proof of identity which includes date of birth and Social Security number or driver's license number. But Mr. Burgess never contacted the Firearms Services Bureau in this case and we know that he did not based on counsel's representation during the circuit court hearing. Ms. Hart's record indicates that she submitted a FOIA demand letter with no identifying information in it. In fact, if she made an inquiry of Firearms Services Bureau prior to issuing her FOIA demand, nothing in her record bears that out. And one would think, given the plain language of Section 7.5b, that a person who had already attempted to get her materials outside of FOIA would have pled that fact at a minimum in her complaint. It is necessary to prove that you are the same person who applied because application and denial letters are not public documents. They both contain confidential information as is commonly the case with applications for any government issued benefit or license. People apply for SNAP, unemployment benefits, Medicaid, a liquor license, or a FOIA card on the assumption, the reasonable assumption, that their private closely held information is not going to be disclosed to anybody but the government officials who are responsible for making a decision on those documents. Counsel, is your argument that with a FOIA request, someone does not have to provide that level of proof? They do not, Your Honor. You don't have to prove that you are who you say you are and when you make a FOIA request in Illinois, you don't even have to give your real name. And if the information is truly public, then it doesn't matter. Anybody is entitled to it. Any person who asked for it is entitled to it. But Counsel, even if in this instance they had provided some type of proof along with their FOIA request of identification, your position would still be you couldn't provide it, right? It would still be you would have to go to the Firearm Services Bureau and provide it to them because, and neither of these plaintiffs did provide identifying information, but FOIA is the wrong place to do that. The FOIA officer responds to FOIA demands and if, in this case, according to the plain language of 7.5b, no matter what kind of identifying information was in that FOIA demand, disclosure was prohibited. Well, let's assume that accurate identification information is provided. Let's just assume that. Is it your position that then it would be appropriate to comply with the FOIA request? It would not be appropriate to release it through FOIA, Your Honor. You would have to go to the Firearm Services Bureau. FOIA says, under FOIA, using FOIA as the tool, you cannot release that information. But it's easy enough to get it elsewhere. FOIA is the wrong tool. I understand what you're saying, but I guess what I'm trying to get at is, are you arguing that in addition to that problem, the plain language of the statute prohibits the disclosure and also the court order prohibits the disclosure? Is the court talking about the permanent injunction in this case? Oh, yes. I mean, it's almost a belt and suspenders that there's the provision of 7.5b, and then there's a permanent injunction that prohibits disclosure to anyone. So providing the identifying information, proving you are who you say you are, really doesn't solve the question, right? People can get, if people go to the Firearm Services Bureau and ask for their own copies of their own documents, they can get copies of their own documents. The conundrum is you don't want to release this information to just anybody. And when anybody can make a FOIA request, ISP has to satisfy itself that the person who's asking for it is the person to whom it belongs. I do not believe the permanent injunction could be read to say that somebody can't get a copy of their own documents from the Firearm Services Bureau. It was more, that was more addressing the fact that the Associated Press back in that day had made a request for the names and the expiration dates of people's FOIA cards, and the Public Access Counselor at that time looked at the law as it was, because that was before 7.5b, and determined that that information could be released. So the Illinois State Rightful Association apparently knew that this legislation was pending, but still wanted that injunction in place, kind of a belt and suspenders. But I don't believe anything in the injunction says someone can't get their own information. Counsel, just so I understand, the crux of your argument is that FOIA is the wrong vehicle for seeking this information, regardless of whether you're producing, you're accompanying that request by identifying information, saying that you're truly who you say you are. Under no circumstances is this information producible, for lack of a better word, under FOIA. Is that your argument? According to 7.5b's plain terms, Your Honor. Counsel, I have a question. You said that they go to the Firearms Services Bureau and provide proof of identity. Is the release to them automatic? Yes, that's my understanding. If you were to go to the headquarters in Springfield, take your driver's license, I think they even have a kiosk in the FOIA, in the lobby area, that's staffed from 830 to 430 every day. If someone were to go there and show their license, they could get copies of their own documents. FOIA is unnecessary. Given the content of those documents, ISP needs to be sure it's not handing over anybody's private, closely held, and often statutorily protected information over to a would-be burglar, stalker, a vengeful ex, or an identity thief. FOIA is directed at public, not private records, and by its terms states that public records are available to anyone who asks for them. FOIA is for monitoring what the government is up to, not for keeping tabs on what its private citizens are doing. And not only is there no need to prove your identity under FOIA, but there's no practical way for ISP, or any other public body for that matter, to ascertain who you are and still comply with the Act. The Act has a turnaround time of five days. It's really not enough if someone provides a letter, like are in the records in this case, for the agency to come back and say, okay, who are you? We need more information. With that five-day turnaround time, it's very likely that that is going to be treated as a denial and there will be litigation. I would like to add, Your Honors, that the use of the word people in 7.5e does not create an implied exception to the Act's plain terms. The appellate court found it significant the word person is defined in the Act to include multiple individuals, but that the word people was left undefined. But the commonplace dictionary definition of person is singular, and yet it functions throughout most of the Act as a plural. Whereas the commonplace dictionary common parlance usage of people, on the other hand, is that it is a group made up of individuals as well as all the individuals in that group. And when you want to distinguish one of them in ordinary usage, you do so explicitly. People like ice cream. Well, except for that one guy over there. It's a good example of the statute on statutes which declares that the plural may encompass the singular as well as the singular encompassing the plural. And subsection v is not the only portion of 7.5 that is written in plural. The first sentence of section 7.5 provides that the following shall be exempt from inspection and copying. And it then goes on to list 55 categories of documents and information that are protected from disclosure. And most of them are written in the plural. Records, applications, users, and so on. And 7.5e was drafted to match that. Throughout section 7.5, the use of the plural is enough to find an unwritten exception to 7.5v for what a person who knows his own name, then there are going to be other unwritten exceptions in 7.5. For example, 7.5b as in void, which protects circulation records of library users. Under the appellate court's logic, I could say I'm a single user of the public library. I would like my circulation history. I should be able to get it from the library's FOIA officer because I know who I am. I checked out those books. I just forgot which ones they are. I should be able to make a demand of the FOIA officer. Why should I have to go to the circulation desk and show them my library card and maybe my driver's license? Just give it to me right now. You could apply this logic to many subsections in 7.5, which would lead to absurd results and possibly even manufactured lawsuits. Turning to the permanent injunction, Your Honor, it has never been lifted and it prohibits ISP from releasing void information. So even if the appellate court's reading were the reasonable one in this case, this court has explicitly held that injunctions must be obeyed until they are lifted. So this injunction would need to be lifted or ISP risks sanctions. And I have nothing further for the moment unless the court has questions for me. Thank you very much, Counsel. Thank you, Your Honor. May it please the Court. Counsel, my name is Thomas Magg. I represent Sandra Hart and Kenneth Burgess in this case. This is, of course, a Freedom of Information Act case. Under the Freedom of Information Act, it's well settled that the public policy of the state of Illinois is that, barring an ethical exception, all documents in the government's hands are presumed, strongly presumed, to be disclosable. Counsel, what about the injunction that your opponent just raised? What do we do with the injunction with respect to this particular request? A couple of points on the injunction. One, it was never raised in the original FOIA denial. It was never raised at all in the trial court for Sandra Hart. It was not even initially raised in the trial court for Mr. Burgess, although eventually the state got around to raising it. With that in mind, every court that has considered it has found that the injunction is inapplicable, and I agree that it is inapplicable. And the reason that it is inapplicable is what was sought to be enjoined from disclosure is not a person's own records to themselves. What was sought to be enjoined was production of lists of FOIA cardholders to third parties, specifically newspapers, although it's not limited to newspapers based on the legislative history of 7.5b and what prompted the lawsuit, and the risk that this information would be published in a public forum. There is nothing in the applicable injunction that even comes close to saying the state cannot produce records to the person that either created those records or which has already been sent to the plaintiff in this case. They simply lost their copy. Can I ask another question? What is your response to the assertion that FOIA was the incorrect vehicle for seeking this information and that there was another appropriate vehicle that is in place for the parties to get this information without using FOIA? It's obvious that counsel has never tried to get any documents out of the State Police Firearm Services Bureau. In sum, they don't answer the telephone for hours at a time. They don't answer emails for days and or weeks at a time. I mean, I invite this court to go to their website and dial the telephone number and see how many hours it takes to get a person if you even can. Obviously, all of this is way beyond the record. That was what my next point was going to be. We're all talking about things that are outside the scope of the record. But if asked, I'm doing my best to answer the court's questions. So can you respond to the argument that Section 2 of C-5 specifically controls here that identifies what private information is, and so therefore that is the kind of information that is not discoverable under the Freedom of Information Act? Okay. What if private information is not – well, it may well include names, addresses, that type of thing. But that's not what we're seeking here. Quite frankly, we don't care if the State redacts my own client's names from my own client's record. That's not what we're trying to get here. What we're trying to get here, as counsel made reference to government action, we're trying to get to what the government's stated reason was for revoking, suspending, otherwise invalidating my client's FOID cards. What happens mechanically is when a FOID card is revoked, suspended, otherwise invalidated, denied as well, is that a letter is mailed to the applicant, the FOID card holder, whatever the case may be. And there's a line on there, required by law, that says, this is the reason that we are suspending, revoking, denying your FOID card. At the end of the day, that's what we're interested in. We don't – Sandra Hart, Kenneth Birch, doesn't need to be told what their own name and address is. They do want to be told what the stated reason they're not being allowed to have a FOID card and thus exercise their Second Amendment rights is, so that they can determine whether or not they can challenge that or not. And if they choose to challenge it, there are two mutually inconsistent mechanisms to do so, depending on the reason that's articulated by the state. One is through an administrative hearing, which is for certain categories of denials, revocations. The other is a circuit court action for other categories of denials, suspensions, revocations. And never the twain shall meet. You can't – what is appropriate for an administrative review is usually, almost always, not appropriate for a circuit court review or vice versa. If we were to file in the circuit court what's appropriate for an administrative review, it would be dismissed for lack of subject matter jurisdiction. If we were to file in the administrative review process what's appropriate for a circuit court action, in, frankly, two or three years, if we're lucky, we'd get a denial that said you filed this in the wrong place. And it also – So then what do we do with 7.5B of the FOIA Act? The following shall be exempt from inspection and copying. The names and information of the people who have applied or received a card or applied for it and received – however it's – but it's a very broad statement. The following shall be exempt from inspection and copying under FOIA. What do we do with that? You've generally read the statutory provision correctly. Again, we're not interested in our own names. We're not interested in our own clients' addresses, social security numbers. We already know all that. What we want is the why that the FOIA card was denied, revoked. And notably, it's something that the state either has or is otherwise supposed to have already sent to you or which was already generated by the requester themselves. Again, when you're looking at the plain language of the statute – It says what's exempt from copying. A number of things. I didn't read the whole statute, so I'll give you an opportunity to respond. But the last line is, and law enforcement agency objections under the Firearm Concealed Carry Act. That's one of the things that's listed in the statute that is exempt from inspection and copying. And we're not asking for that. All right. It also says information. It says the names and information of people who applied for or received. So you said you don't care about their names or their addresses, but it's the information about their denial, revocation, suspension that you're seeking. But information is specifically listed as something that is exempt. The legislative history in this case indicates not that the legislature was concerned with Illinois citizens getting their own information. Let me start here. Let's talk about plain language first. Okay. Let's talk about what this language says specifically. The following shall be exempt from inspection and copying. Information. What is it you're saying that you are requesting that does not fall into the legislative plain language as to these documents cannot be discovered under FOIA? All right. We're not looking for our own clients' names. We're not looking for our own clients' addresses, their FOIA card number, their Social Security number. We're not looking for our own clients' date of birth. We know all of that. What we're looking for is what the state did, what its articulated reason was, and you get right down to it, for denying, revoking, suspending our clients' FOIA cards so that we can determine whether or not it's factually accurate. And why does that information that you're asking for not fall within this specific statute? That's the question we're asking over again. Specifically, the legislature said these documents are not available for inspection and copying under FOIA. Explain to us how your request does not include any of those long lists of documents. One, as noted by the appellate court in Section 7, it makes clear that private information, the person can't, there's an exception for their own information. We're seeking our own information. Two, the information we're seeking is not about the person. It's why the state did what it did. We're not interested in, like I said, our clients receiving, identifying information on themselves. But counsel, it says names and information of people. It doesn't say names and information about people or identifying people. And that's pretty broad, isn't it? It can be interpreted broadly, but I don't think that's the intent of the legislature, because that would result with an absurd result. And, of course, statutes are, or the legislature is presumed not to intend an absurd result. It would be absurd. But didn't it, we're trying to figure out what the legislature wanted, right? That's our goal here. Yes. Our first step is plain language. I think that's what we're all talking about. We're reading this section, there are really two sections, but this section specifically we're talking about 7.5. What do the words mean? That's our goal here. Okay. And we're debating what these words mean. Specifically, there are certain documents that cannot be inspected and copied under FOIA. Another piece of it, of the same statutes, has an exception that can be, where information can be revealed, and that's under the databases under the Firearms Concealed Carry Act, records of the Concealed Carry Act Licensee Review Board under the Firearms Concealed Carry Act, and law enforcement agency objections under the Firearms Concealed Carry Act. So you say that that doesn't work very well, but that's not what we're talking about. We're saying this is what the language says. These documents are not subject to FOIA, can't be inspected or copied, but there are other avenues where people can get information. Well, if you want to get ultra technical, unless otherwise authorized by the Firearms Concealed Carry Act, if you go to the Firearms Concealed Carry Act, it expressly authorizes the release of denials and revocations of concealed carry licenses, which are, at least at this point, printed on FOIA cards. So if you want to get ultra technical, that's an authorization under the Firearms Concealed Carry Act. But I don't think you'd get that far because we're not seeking information of people. We're seeking information of why the state acted for the persons who they acted against, which has actually either already been sent and lost or has, in this case, they were sent, but in other cases. Counsel, the legislative, the language of the statute, I think, is clear. You don't like what it says, but it's clear. Isn't your argument, or shouldn't your argument be that the legislature should amend the statute and change the language if they intended it to apply in the way that you're arguing? Because the language of the statute is clear. I don't think we can look at legislative history when the statute is clear on its face. I mean, you don't like what it says, but it seems pretty clear. So isn't your quarrel with the legislature in terms of maybe amending the statute to say what you think it should say? I agree the statute is not the model of clarity. Oh, that's the opposite of what I said. I think it's pretty clear. It may not be what you like it to say, but it's pretty clear. Well, the legislative history does not support the interpretation that a person cannot get their own information. When the statute is clear, do we reach the legislative history? In determining the plain meaning of the statute, there are things the court can consider, one of which is the problem sought to be addressed by the legislature. The problem sought to be addressed by the legislature was not persons getting their own information. It was third parties trying to get their information. And the reason for the law was not to prevent persons from getting their own information. The reason for the law was to prevent third parties from disclosing it. I agree with, you know, even if I agree with that, what about the argument that one of the reasons for making sure that only the person, only people who are the real person seeking their information are the ones that are getting it, only the requester. If you're requesting your own information and you're really the requester, you have another vehicle for seeking that information other than FOIA, and FOIA is really directed to the general public or to other seekers and not to individuals who are seeking their own information. What about that argument? The only other avenue I could come up with that's not questionable at best, we could file a discovery action in the circuit court naming the Illinois State Police and seek it that way, but I think that would be a waste of resources when all you have to do is send a request under the Freedom of Information Act. Right now, if you go to the state police website, there's a form on the state police website that references 7.5V for you to verify your identity to send it along with it. It didn't exist when these cases were filed, but it's there now. So if they want you to verify their identity and you haven't done it, all they have to do is send it back with a copy of that form that's on their own website and say, please fill this out and verify your identification. Counsel, I have a question regarding Section 1C of the Act where it says that personal information, the disclosure of which would constitute clearly unwarranted invasion of privacy, is exempt unless the disclosure is consented to in writing by the individual subjects of the information. Yes. And would that mean then by the clients filing their FOIA request, not only that they can obtain whatever information is in their file, but that anyone else could as well? I believe that if the client consented appropriately, yes, you can authorize persons to obtain your information, just like you can authorize third persons to obtain your federal tax records if you fill out the right form. I mean, you can certainly waive attorney-client privilege, among others. So is that what you're saying that your clients did under 1C was to waive that? No, they simply requested their own information. They didn't authorize it to be released to newspapers or generally to random people off the street. I would simply like to close in the time I have remaining that what we're seeking is our own information. We don't want anybody else's information. We want the information that shows what the government did. There is no other system under the law to get documents short of a discovery action or a subpoena, and you can't send a subpoena without a court case on file. And not the database that counsel referred to? Are you saying you cannot get that information from the database? The Firearms Services Bureau. It's in their database, I'm quite certain. And you could get, I mean, that's what it's set up to do. So you could get that information. The record in this case does not indicate that. I can represent that probably in the last 6 to 12 months, for some people that's possible, but not for everybody. That would be a different argument. That would be a different argument. The statute creates this other path for someone to get their own information. I'm not aware of any citation to that authority provided in the briefing that simply seems to be argument of counsel, short of a respondent discovery action or a subpoena from some case on file. I'd ask that the court affirm both the appellate court and the trial courts. Thank you. Thank you very much. A rebuttal from the appellant. Your Honor, the presence of private documents in the government's possession in the government's files does not convert them into public documents. Counsel? Yes. Sorry to interrupt, but I'd really like you to start with this notion that the Firearm Services Bureau, that that is not a mechanism by which you can obtain this information. That's what your opposing counsel said. But, in fact, it is. Every agency has a way of getting your private information if you need it. Secretary of State makes you pay money to get your driver's history, but it's only $10. Firearm Services Bureau, they will give you your documents if you provide them with proof of identity. This case went out very early in the pleading, so there wasn't the opportunity to make an evidentiary record that we otherwise would have made. But people can get their documents that way. But what's interesting is what these plaintiffs were seeking were paper copies of the applications that they filled out. And paper copies have not been used in years, not since that portal was created. Now you don't fill out paper. You apply online, and you go from one screen to another, and you don't have a form that you fill out. It's one screen to another. And so there isn't a paper copy to be had. So one of the things that tells us is that whatever information it was that made these plaintiffs either ineligible for a FOIA card, that's years old. It's stale. It's too late to appeal that. They're certainly entitled to that information for their own personal records, but if what they really want is to get a FOIA card to exercise their Second Amendment rights, then it would be much easier and probably less expensive than court action to pay the $10, not to suggest that that's de minimis, but pay $10 and reapply. Well, opposing counsel is saying they want to know the basis for the denial.  So you're saying that there's no paper that exists that would have that on it, but that they could get that information somewhere else. I apologize, Your Honor. I really wasn't clear. I meant that there isn't a paper. Well, nowadays there isn't a paper application. These plaintiffs, I do believe, filled out a paper application because they're asking for paper copies. You can't get paper copies now, but you could get a copy of what you filed pre-2015, and also their denial letters would be on file on paper. The problem is under FOIA, if you release those documents under FOIA, you're going to have to redact all that private information. Often, well, if someone was denied a FOIA card because they had a certain kind of criminal conviction, okay, that's a matter of public record, but not all denials are based on that. Some of them could be on someone's juvenile history. They could be on somebody's mental health history. There could be a reason that is protected. So that's going to be redacted too, and in the end, that isn't going to help these plaintiffs know why they were denied or revoked. And people can pick up— But Ms. Coon, if all of the information that was personal was redacted, and just the conclusion of why the denial was made, so you wouldn't be able to match that to anyone. It would just be a conclusion, which is even different than an objection, but it's what the conclusion was and why the denial was made, and that's all they're seeking. Why is that prohibitive? What I'm saying, Your Honor, is the reason that they were denied may or may not have to be redacted. So it's possible if they were to get a copy of their denial letter, they might be able to see the reason if it was a matter of public record, but if it was one of these other matters, you know, juvenile history, history of addiction to narcotics, recent mental health hospitalization, that kind of information is protected, and that would be redacted. And so in the end, a letter like that, all it would tell these people is what they already know, that they were denied or revoked, and it wouldn't tell them why. Unless there are further questions on that point, I would just like to point out that 7.1c of FOIA is for public documents that have potentially embarrassing information in them, like the names of witnesses in an investigation. That you can consent to if you want, but that's a completely separate matter from 7.1b, which makes that information off limits. Unless the Court has further questions, I would urge for all the reasons stated today and those in our brief, I would ask that the appellate court's decision be reversed. Thank you very much, both counsels, for your spirited arguments. This case, agenda number 15, no, excuse me, number 14, number 128275, Sandra Hart, et al., versus the Illinois State Police will be taken under advisory.